Good morning. May it please the Court, my name is David Parker. I represent a corporate citizen of South Korea and the first of the victims of Christopher Kim. This morning I'm dividing time with Mr. Urogari and I'd like to save two minutes for rebuttal. This is not our first time here, but since we're back, this case from a procedural point of view has achieved Kafka-esque proportions. After all, we were tossed out the first time because supposedly there was no jurisdiction to hear our claim once the statute of limitations, erroneously, was held to have run. So we came back up here, the Ninth Circuit said the statute hadn't run, and while the Court could have said nothing more and simply sent it back, the Ninth Circuit decided to go further and address the legal question of the standing of victims like Das, and whether or not they have a right to their case separate and apart from the government. And the Ninth Circuit said, whereas here the government's claim fails on the merits, the Court will not be obliged to dismiss competing claimants' allegations of ownership. And so we went back down thinking we'd get our day in court. And what happened? The District Court told us, oh, I already resolved your case. Oh, really? When? Oh, in 2007, when I granted summary judgment against the government. We have never had the opportunity to present evidence of our case, of our case. And so we are back again asking for the opportunity, as the published decision of the Ninth Circuit Court said, on our case, independent of the merits of the government's case. When we went back down after the 2008 ruling, the issuance of the published decision, the Court said that the granting of summary judgment against the government barred us, even though the Court of Appeal had already said that our claim existed independent of the government, even though the claimants, and I hope someone will ask them the question why, even though the claimants who say that our claim is simply the twin of the government, why they didn't file a summary judgment motion against us, why they adopted a strategy of divide and conquer, because they made a choice. We're only going to move against the government. We had a choice. It wasn't a particularly good one, I might say, but we had a choice. We could stand on the sidelines. After all, they weren't shooting at us. Or we could go into the fray. But it's 2007, remember. The Ninth Circuit hasn't ruled, and the district court judge has said that our fate is tethered to the government. So we made a decision to come in and present evidence. Evidence of what? Not our case, because they didn't move against our case. And when we presented our evidence, another good question for them, why did they object to our evidence, saying, after all, they didn't move against us? And now they say, well, the cases are the same. But they're not the same. They're not the same legally. We don't have to prove a scheme to defraud. We don't involve, there's no mail fraud involved in our common law fraud claim. We're not proving federal statutory violations. We're proving good old California common law fraud. And we don't have to prove the government's elements. More than that, the facts are different. We're the first victim. The fraud was perpetrated earlier than the first date in the complaints filed by the government, and the government didn't even mention DOS in its complaint. Our case is separate factually and legally, and the Ninth Circuit said so. Counsel, this is a question actually for all of you. I have to assume that there have been some efforts to settle all these matters. Nobody's life is at stake. It's all about money. And if any of you, let me just put this out there. If any of the parties think that the use of our mediation services might be helpful in resolving these very old and complicated matters, I at least would appreciate knowing that. Before I, I'd just like to address one other point. And I don't mean to ignore that. No, that's fine. I heard it, but I can't really respond to it. Well, is there still money around? Well, there's money in the sense of the forfeiture. Remember that the district court judge did extend the stay. So those properties that were subject to forfeiture remain the subject of the court's jurisdiction. And that's the only, to be honest, that's the only way anyone recovers anything is from those properties. You always have to be honest. Try our best. Now, if I could address one other point. I think that the fault in terms of the district court's decision is that she made three assumptions, and all three of them are wrong. She assumed that our case involved the same nucleus of facts. It's just not true. Second, she assumed we had an opportunity to be heard. The opportunity, yes, we were allowed to present evidence to support the government's case, but that's not an opportunity to be heard on our case. Finally, she assumed, she assumed that we presented, in support of the government's case, all of the evidence we would have presented if the motion had been directed against us. They can't, there's no basis on which to make that assumption. Especially, and we've quoted from the transcript, especially when there were serious issues about reopening discovery. You'll recall that the mention in the earlier argument that Erica Kim had taken the fifth, and so she didn't testify at the trial, the optional case. We couldn't take her deposition because she took the fifth. But by the time these events took place, she cut her deal with the government, and the Fifth Amendment was waived. We had the right to take her deposition, I submit. And we asked the district court for permission. And the court said, I'm deferring ruling on these discovery matters until I resolve this issue of whether we were bound by her 2007 summary judgment ruling. She said we were, and therefore, we never had a chance to even argue why we should be able to reopen discovery. Erica Kim's deposition is another, is one example. There were Korean witnesses, and we were, we presented evidence that the Kim claimants had interfered with our ability to take depositions in Seoul by telling witnesses they didn't have to show up. We wanted the opportunity to go back and take those depositions. After the election, there was a distinct change in the climate, and we had every reason to believe we could get that. But the judge never addressed the issue. We never got our chance. I'll save what time I have left, unless there are questions you'd like me to address now. But did you diagram your case? I knew you were going to ask me that question. And the answer is no, because it's as easy as A, B, and C. A, we have an independent case. B, the judge didn't rule against us. And C, well, you know what C is. C is we should get back down there and have a chance to put on our case. I'm glad it's that simple. But no diagram. I'm glad it's that simple. Thank you. I'll sit down. Okay. Your Honor, addressing your question first, optional would be inclined to go into mediation if there may be some possibility that the case would resolve there. However, we also feel that we did not get our opportunity to prove our case. We proved, we asked the court to, we brought a summary judgment motion. And Judge Collins wouldn't rule on it, setting forth many of the same things that we proved to the jury with respect to the stock fraud in the case that we previously talked about here. And Christopher Kim admitted that all of the properties at issue in this particular case were purchased with monies that he gained as a result of his acquisition of optional stock in what we condemn as a fraudulent improper mint. And the Ninth Circuit specifically ordered the district court to consider the competing claims to the property. Now, and that's what she didn't do. Now, the legal arguments that the district court used I believe were incorrect for all of the reasons that were set forth in our brief, particularly that there's no judgment in this case to apply any res judicata type principles with respect to her determination that the summary judgment, that the government didn't prove its claim. So there is, and the Ninth Circuit authority, I think, in Ray Freeman and the other cases that we cited say that, you know, when res judicata and claims preclusion and those types of principles have no application when what you are talking about is the same case that is going back and forth between the court of appeal and the district court. So what is looked at is the mandate itself and was there actually a determination by the Ninth Circuit that what it gave on one hand in the published decision in this case that the district court had both the duty and jurisdiction to decide the competing claims to the property. It took away sub silencio in the memorandum decision. And it certainly didn't say that anywhere. And the traditional rules that courts apply in those circumstances is that if it's not said expressly or the necessary implication of that, then it is not a matter that has been decided by the Ninth Circuit. So I don't, the Ninth Circuit did not tell the district court that it had to not allow the claims of optional and or dos to the properties to be litigated. In fact, it quoted directly contrary to that in the published decision that it had a duty to do that. So basically, and the reason that we didn't get to litigate our claims the first time was the court's jurisdictional ruling, which the court had reversed. The court had said over and over again that we are not entitled to proceed on our claims unless the government prevails. So we would as well like a determination of the summary judgment motion that we brought with respect to the ownership interest that it has in these particular properties. And so we would ask the court for that. And I would reserve any remaining time to respond to what Mr. Honig has to say. Hello, Your Honors, again. Your Honors, what Doss and Optional are trying to avoid is the simple fact that the government brought the original forfeiture case for the benefit of Doss and Optional as alleged victims. And a magistrate judge found that they shared a common interest in this case. Now, what happened? Doss and Optional each filed claims in the very beginning of the case and answers, admitting all the allegations that the government put forth as far as alleged fraud schemes. And then Doss alleged its separate fraud scheme in that initial claim, as did Optional allege its separate fraud scheme. And then we conducted discovery for six months or so. And Doss and Optional participated in that discovery completely. They actually moved for additional time to conduct discovery, you'll see in our brief, and got that additional time. We actually went to Korea to take their positions at their request, and we did that. And then Kim Klamath filed a motion for summary judgment. Doss and Optional opposed it. And how did they oppose it? They said, here's the fraud schemes that were conducted against Doss. And these fraud schemes, we can show evidence that these fraud schemes existed and were conducted. And here's our evidence. Government did the same thing. So all three parties said, here's evidence of these three, these two particular fraud schemes. All right? District Court said insufficient evidence of the fraud schemes. Insufficient evidence to show that Doss and Optional were wrong. Doss and Optional, along with the government, appealed to the Ninth Circuit. The Ninth Circuit affirmed their judgments, saying insufficient evidence of fraud schemes conducted against Doss, fraud schemes conducted against Optional. The Ninth Circuit affirmed the final judgment. On page 73 of the appellee's supplemental excerpts of record are the final judgment, or the notices of appeal, 73 and 74, by Doss and Optional. They both appealed the final judgment, which orders release of the properties to the Kim claims. And that's 73 through 78. They appealed that. The Ninth Circuit affirmed the judgments, affirmed the summary judgment, affirmed the final judgment, as to these summary judgment properties, the first that were involved in that decision. Now, the Ninth Circuit had reversed as to other properties, what we call the May 2004 properties, based on jurisdictional issues, and said go back down to the Ninth Circuit, to the district court, and determine their claims. Well, the court said, well, they already presented all the evidence they had. The evidence as to the summary judgment properties is no different from the evidence for the May 2004 properties. It's the same evidence. They didn't say, oh, here's the evidence as to these properties, one fraud scheme, and here's the evidence as to these properties, different fraud schemes. Doss said, here's the fraud scheme, one fraud scheme, our money was taken, and it was, and the Kim claimants got it. So it was all the same case. One case alleging a scheme against Doss, one alleging a scheme against Optional. And they put forth their evidence. They're saying, well, we didn't get to post some witnesses in Korea. Well, they tried. I mean, that's like any typical civil case. You try to get a witness to testify. If they don't show up, they don't show up. Or if they don't say what you like or what you want them to say, they don't say that. You get that question. The question really is what is the scope of the district court's ruling on the original motion for summary judgment? Because clearly this court said you can go back and deal with the competing claims that these claimants have. You have jurisdiction to do that. Go forth and decide that issue. Right. So the real question is, was it already decided, that issue, or not? And your original motion for summary judgment pertained only to the government's case, by its own terms. It said the government doesn't have a case. Not only was it, yeah. And so the question then is, does that mean that the district court, when it granted the motion of necessity, was granting only the part that pertained to the government's claim, which maybe is what she thought that she had, but this court said there's something else still alive. What happened was, as Mr. Parker said, was the claimants objected to Dawson Optional presenting oppositions to our summary judgment. But now you're saying it's too late. They couldn't do it then, but they can't do it now, either. Isn't that your position? That's the answer, is we objected, and the court said, no, they can present their own oppositions. I know that that's what, but whether the court ruled on their claims, as distinct from allowing them to try to bolster the government's case, really are two different questions. They are two different things. If you look at it as a claim being a constructive trust remedy, or a claim being we were defrauded, you have to have the wrong, the underlying wrong, to get to a constructive trust remedy. Always have to start with that. That was completely litigated. Was there a wrong committed against Dawson Optional? Dawson Optional said, here's the evidence that a wrong was committed against us. Here's all we have. This is it. Why would they withhold any evidence? Well, that still doesn't say anything about what the scope of the original order was. Well, the scope of the original order, as a result, ordered all the properties released to the claimant. Well, no, the ruling on the summary judgment. If your only motion was the government can't prove its case, then of necessity the district court ruled only that the government couldn't prove its case. That wasn't the scope of our motion. Our scope of our motion was that there was insufficient evidence that a fraud scheme was conducted. Oh, wait a minute, wait a minute, wait a minute. Your motion for summary judgment says, at page ER-328, you're moving for summary judgment because the plaintiff government cannot prevail at trial on the causes of action and the complaints for forfeiture. Right. That was what your motion said. But then you have to look at the cause of action. The cause of action is that a fraud scheme was conducted against Dawson and a fraud scheme was conducted against Optional. Now, Dawson Optional didn't sit mildly by the sidelines and say, you know, this is the government's case. They actually went in there and tried to present and presented the whole evidence supporting their case. The only thing they didn't get to is, well, if had they prevailed, what would be the remedy for that case? But they can't sit here and claim, stand here and claim that, well, we didn't have our chance to present our evidence. That's completely disingenuous. Well, it doesn't matter if they had. I guess I'm not sure why that even matters. If the district court didn't ever rule on anything except the government's case, whether the evidence was there or not doesn't seem to be pertinent. But that's not what the scope of either the district court's ruling was. Maybe the motion was. Well, it's certainly the motion. And then you end your memorandum in support on page 360 by requesting that there be summary judgment against the plaintiff government. But it's plaintiff government who actually initiated the case. Well, I know that. But these claimant's cases are derivative of the government's case. If the government's case ---- It sounds like you're re-arguing the case that our Court already decided, though, when you say that. Because didn't our ---- And our Court already decided that Dost and Elschel didn't present sufficient evidence of a fraud scheme. Now, how can they come back down to the district court and try again to present the same case, sufficient to show that there was a fraud scheme? Because there hasn't been a judgment as to that case. That claim, I guess, would be the way it would ---- This Court said you can go back and deal with these claimants. You still have jurisdiction to deal with the claimants. Implicitly, they had not been dealt with at all. That seems to be the necessary implication of our previous decision. It turns out it's had the whole issue of preclusion, the whole doctrine of preclusion because if they had the opportunity ---- It's the law of the case, the previous decision of this Court. That's right. It may have been wrong. And a lot of what I'm hearing from you is it's wrong because it doesn't make any sense. But it is what it is. And it implicitly, to me, reads you decided stuff about the government. You didn't decide these other claims. Go back and do it. That's how I read it. But I shouldn't be asking questions of the Court, but I guess hypothetically, what was not decided about Dawson Optional's claims? That's really it. I mean, what was not decided? What was decided, the answer was that they did not present sufficient evidence that there was a fraud scheme. What was left that has yet to be litigated as to Dawson Optional's claims? If we went back down to district court, what are they going to do? They're going to present the same evidence, and maybe they'll try to bolster the case with new evidence, which should not be proper because we've already conducted discovery. But what is left there? And Dawson Optional fails to present in their papers before the district court on this motion, where we are today, and to this court in their briefs, what was not presented before, that they had in the possession and gotten discovery that they withheld for some reason. I mean, I'll say again, it doesn't make sense, but, again, it turns on its head of what preclusion is all about. I mean, if they have the opportunity to present, and that's what the cases all say, opportunity to present their evidence, court reviews the evidence and looks at that evidence, says, well, there's insufficient evidence of the wrong in this case. How can they go back down to court again before Judge Collins and say, okay, we're going to present our evidence that there was a wrong committed against us? She's already looked at all of that evidence, reams of evidence, as the court knows, reams of evidence that still were not enough to show that there was a wrong committed against either Dawson or Optional.  It'll just waste the court's time to go and present the same evidence again. She'll look at, I don't know exactly what she'll do, but they've already conducted all the discovery. They've had their chance. She'll look at the same evidence and say, this is, unless they try to come up with new arguments, but here's the evidence that was presented. They've already shown it to me. It's the same evidence. I'm going to rule against them again. There's insufficient evidence of a fraud scheme. And for the sake of the least of judicial resources, why should the district court have to rule on the same evidence again? Speaking of judicial resources, what is your response to my question about the potential utility of mediation? The parties were asked that in the beginning, Your Honor, and I don't know what the rules are. So you've been down that road and it hasn't worked. And the mediator's conclusion was that it's not proper. We've had discussions in the past. I don't know what was said by the other parties, but that was the conclusion of the mediator. Thank you. Thank you, Your Honor. Well, I'd like a staff answering the question, what was not decided? Evidence doesn't exist in a vacuum. It has to relate to something. In the battle that we fought over the government, the motion directed against the government only, the evidence related to the government's claims. They were federal, not state, crime-based, not tort-based. We never had a chance to take our evidence and explain why common law fraud had been perpetrated in year 2000 by Christopher Kim against Doss. That's what was not decided. What we have here is the equivalent of a sua sponte, and worse, sub silencio granting of summary judgment. We lost the case in 2007, according to the district court. When we walked out of the courtroom, we certainly had no idea. Simple due process allows you to know if a motion is being directed against you. We made a tactical choice to present evidence. But that is not, that was under the force of a district court's ruling that we were tethered to the government's case. And the Ninth Circuit, one year later, said that was wrong. Final point, if the memorandum decision was meant to resolve all claims as to all parties on the merits, then why issue the published decision? Why address the statute of limitations? Why address the standing issue? If the force of that decision was to bring the case to an end, what was there for the court to decide? And if it was just a ministerial decision, then why didn't the Ninth Circuit say, you will do this? That's not what the Ninth Circuit said. The two cases, the two opinions do coexist. They are not in contradiction. But the published decision makes it clear, notwithstanding the merits of the government's case, we have a right to present evidence. That is in our case. Thank you. Okay. I just wanted to call to the court's attention two facts. And the first one is, not only was Mr. Honig's motion directed only at the government, and that was what the district court ultimately ruled on, and the court of appeal with respect to the government's burden of proof. When we were still at the district court level, and before the motion was ruled on, and before she granted the motion against the summary judgment, I asked Mr. Honig, what about optional? And in response to that, he said, the motion is not directed at optional. It is directed only at the government. So Mr. Honig himself admitted that the motion was, as it was essentially, as it was framed and put to the court against the government only. And I had mentioned with regard to the issue regarding claims preclusion and res judicata in Ray Freeman. And in looking at my brief, I don't believe that we cited in Ray Freeman. We cited instead Hansen and Rowland versus C.F. Lido Company. And in Ray Freeman, Rick later relied on that. But what the court said then, the above-mentioned rule of res judicata urged on us by appellant applies in a situation where the second cause of action is on the same cause of action and between the same parties as the first action. It does not apply where a controversy on appeal had not been concluded and no second action is being brought, but where there has been a reversal and remand for further proceedings in the same litigation. And that's essentially what we have going on here. So these doctrines of claims preclusion and issue preclusion ought not to comply. And, you know, while we did try to bolster the government's claims, we are not in control of the government. We're not the government. We can't bring a cause of action for forfeiture under the CAFRA. All we had was our own claims. And one of the things that I had pointed out to the Ninth Circuit when we were here the last time with regard to those appeals which had all been consolidated in my reply brief was the fact that the government appeared to be bringing a claim that was different now than it had originally amended or alleged in its complaint, its forfeiture complaints. And obviously as a party on the other side of the litigation to the government and being the fact that we are nothing more than a small Korean corporation, I certainly have no ability to make the United States government do anything. But what I had pointed out in footnote three in my reply brief, it is important to note that the fraud claim the government alleged in its forfeiture complaint against the properties was based on Apelli's embezzlement of 37.1 billion Korean won from Optional while they were in control of the company. Optional made that same claim. However, its constructive trust was also based on Apelli's fraudulent acquisition and use of Optional stock to manipulate the market and generate huge returns for themselves. As set forth in Optional's opening brief from the papers the government filed in opposition to Apelli's motion for summary judgment and in this court, it is hard to tell if the government still seeks forfeiture based on the fraud inherent of the embezzlement of monies from Optional. So when we went back to the district court, we did... that supports the fraud in the stock and the fraudulent acquisition of stock. We presented that in the summary judgment motion to the district court. She didn't rule on it, and we're asking if you have any extra time, if you could consider ruling on it yourselves, or we would request that the case be revanded with instructions to rule on Optional's motion for summary judgment directed at the Kim claim. Thank you all. All right. I have a citation. I just forgot. You forgot a citation? It's on the issue of progression. You just leave. We have... We take care of that. We're very efficient. Thank you. We have dumb labels. We'll adjourn or recess until 8 a.m. Friday morning. This court is adjourned. Thank you.
judges: Pregerson, Ripple, Graber